# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  3:22cv00468 |
| | ) | |
| SISI TRUCKING LLC and AIMAL | ) | |
| SIDDIQI, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff BMO Harris Bank N.A., by and through its undersigned counsel, complains of defendants Sisi Trucking LLC and Aimal Siddiq as follows:

### I. JURISDICTION AND VENUE

1. The parties are of diverse citizenship.

2. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

4. The claims forming the basis of this Verified Complaint, or a significant portion thereof, arose in that geographical area which is contained within the federal judicial district known as the Eastern District of Virginia. Specifically, the defendants to this action are located in said District, and the collateral BMO Harris Bank N.A. seeks to have seized (i.e., the vehicles defined below) is believed to be located at 2021 South Providence Road, Richmond, Virginia 23236, which is located within the Eastern District of Virginia.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## II.  THE PARTIES

6. Plaintiff BMO Harris Bank N.A. (the "Bank") is a national banking association with a principal place of business located at 111 W. Monroe Street, Chicago, Illinois 60694.

7. Defendant Sisi Trucking LLC ("Borrower") is a corporation with a principal place of business at 2021 South Providence Road, Richmond, Virginia 23236.

8. Defendant Aimal Siddiqi ("Guarantor," collectively with the Borrower, the "Defendants") is an individual residing, upon information and belief, at 3107 Duryea Place, Richmond, Virginia 23236.

## III.   FACTUAL BACKGROUND

### A.   The Loan Agreement

9. On December 10, 2021, Borrower and Bank entered into that certain Loan and Security Agreement (the "Loan Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of:

   (i)   one (1) 2017 Mack Pinnacle Series CXU613 117.3" BBC SBFA Tractor 6X4 identified by serial number 1M1AW09Y0HM082750;

   (ii)  one (1) 2017 Mack Pinnacle Series CXU613 117.3" BBC SBFA Tractor 6X4 identified by serial number 1M1AW09Y1HM082742;

   (iii) one (1) 2017 Mack Pinnacle Series CXU613 117.3" BBC SBFA Tractor 6X4 identified by serial number 1M1AW09Y3HM082743;

   (iv)  one (1) 2018 International LT Series LT625 6X4 identified by serial number 3HSDZTZRXJN416289 (collectively, the "Collateral").

10. Bank agreed to finance Borrower's purchase of the Collateral in exchange for a total payment of $325,527.40, payable in 44 monthly installments of $7,398.35 each, commencing on February 1, 2022.  A copy of the Loan Agreement is attached hereto as **Exhibit A**.

11. As consideration for entering into the Loan Agreement, Borrower granted Bank a security interest in and to the Collateral as more fully described in the Loan Agreement. *See* Loan Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit B**, Bank perfected its security interest in and to the Collateral by recording its lien with the Commonwealth of Virginia Department of Motor Vehicles.

12. As further consideration for entering into the Loan Agreement, on or about December 10, 2021, Guarantor executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Loan Agreement (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit C** and incorporated herein.

### B. Default Provisions

13. Pursuant to the Loan Agreement, an Event of Default shall occur if, *inter alia*, Borrower fails to pay when due any amount owed to Bank under the Loan Agreement. *See* Loan Agreement § 5.1.

14. Additionally, an Event of Default shall occur if "Debtor or Guarantor fails to pay any Liabilities when due to Bank or any Affiliate of Bank or is otherwise in default under any other document, agreement or instrument…." *Id*.

15. Pursuant to the Loan Agreement, upon the occurrence of an Event of Default, Bank may, at its option, with or without notice to Borrower, *inter alia*, (i) declare the Loan Agreements to be in default, (ii) declare the indebtedness under the Loan Agreements to be immediately due and payable, and (iii) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. *See* Loan Agreement § 5.2. All of Bank's rights under the Loan Agreements are cumulative and not alternative. *See* Loan Agreement §7.3(b).

16. Pursuant to the Loan Agreement, Borrower is obligated to pay Bank all expenses of retaking, holding, preparing for sale, selling and the like of the Collateral, including without limitation (a) the reasonable fees of any attorneys retained by Bank and (b) all other legal expenses incurred by Bank. *See* Loan Agreement § 5.2.

17. Borrower is liable to Bank for any deficiency remaining after disposition of the Collateral after default. *See id.*

18. Upon acceleration of Borrower's obligations under the Loan Agreement, interest on all sums then owing shall accrue at the rate of 1½% per month. *See* Loan Agreement § 5.3.

19. Pursuant to the terms of the Loan Agreement, Borrower waived its right to a jury trial of any claim or cause of action relating thereto. *See* Loan Agreement § 7.5.

20. Pursuant to the terms of the Guaranty, Guarantor waived his right to a jury trial of any claim or cause of action relating thereto. *See* Guaranty.

### C.   The Payment Defaults

21. Borrower is in default under the terms and conditions of the Loan Agreement, having failed, *inter alia*, to make payments when due thereunder.

22. Guarantor is in default under the terms and conditions of the Guaranty, having failed to make payments when due thereunder.

23. Bank has performed any and all obligations to be performed by it under the terms of the Loan Agreement and the Guaranty.

24. Bank has performed any and all obligations to be performed by it under the terms of the Loan Agreement and the Guaranty.

25. On June 9, 2022, Bank notified Defendants of the default status of the Loan Agreement (the "Default Notices") and demanded payment in full on the Loan Agreement. True

and correct copies of the Default Notices are attached hereto as **Exhibit D** and incorporated herein.

26. At the time of filing of this Complaint, Defendants have not cured the default under the Loan Agreement and the Guaranty, as set forth in the Default Notices.

27. Due to these defaults and pursuant to the express terms of the Loan Agreement and Guaranty, Bank is entitled to contractual money damages as set forth therein.

28. As of June 9, 2022, the balance due under the Loan Agreement was not less than $261,657.56. Interest at the Default Rate continues to accrue in the amount of $126.53 per day.

### D. Bank's Damages

29. As a result of the breaches by Borrower and Guarantor under the Loan Agreement and Guaranty, respectively, Bank has been damaged in an aggregate amount equal to not less than $261,657.56 as of June 9, 2022.

30. The Loan Agreements permit Bank to collect, as additional damages, its attorneys' fees and costs of collection incurred in relation to the Loan Agreements and the Collateral. *See* Loan Agreements, § 5.2.

### COUNT I – BREACH OF CONTRACT
### (Against Borrower)

31. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

32. Bank has performed all terms and conditions of the Loan Agreement to be performed by Bank.

33. In contrast, Borrower has not performed under the Loan Agreement and has failed to make payments to Bank under the Loan Agreement when due.

34. Under the Loan Agreement, Bank is entitled to contractual money damages from Borrower as provided therein.

35. The amount due under the Loan Agreement as of June 9, 2022, was not less than $261,657.56, which amount is immediately due and owing from Borrower, together with interest on and after June 9, 2022, at the default rate specified in the Loan Agreement.

36. The Loan Agreement provides that Bank shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Loan Agreement, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II – BREACH OF GUARANTY
### (Against Guarantor)

37. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

38. Bank has performed all terms and conditions of the Guaranty to be performed by Bank.

39. Under the Guaranty, Guarantor is liable for all amounts due to Bank under the Loan Agreement.

40. Guarantor is in default under the terms and conditions of the Guaranty, having failed to make payments thereunder.

41. As a direct and proximate result of Guarantor's breach of the Guaranty, Bank has incurred and continues to incur substantial damages.

42. The Loan Agreement and Guaranty provide that Bank shall recover its attorneys' fees, costs of collection, and interest on all amounts due and owing.

43. Bank has been required to retain the services of counsel to prosecute this claim and is therefore entitled to an award of attorneys' fees and costs.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Guarantor in the amount due under the Guaranty, the exact amount to be proven at or before trial.

### THIRD CAUSE OF ACTION
### (Injunctive Relief—Collateral)

44. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

45. Borrower continues to possess and utilize, or is capable of utilizing, the Loan Collateral throughout the Commonwealth of Virginia and perhaps beyond.

46. The Collateral depreciates and deteriorates as a result of its continued use by Borrower and those in its employ.

47. Borrower has or should have in place "command and control" capabilities to identify, locate, and surrender the Collateral.

48. Bank will suffer irreparable injury for which no adequate remedy at law exists unless Borrower and other persons and firms having knowledge of the requested injunction are (a) enjoined from continuing to use the Collateral; (b) ordered to advise Bank of the location of the Collateral; and (c) ordered to surrender the Collateral to Bank.

**WHEREFORE**, Bank prays that Borrower and other persons and firms having knowledge of the injunction be temporarily, preliminarily, and permanently enjoined from using the Collateral as of the date of entry of the injunction order; Borrower be ordered to disclose to

Bank the precise location of the Collateral in order for Bank or its agents to reclaim it; Borrower be temporarily, preliminarily, and permanently enjoined from restricting the access of Bank or its agents to the Collateral; Bank be awarded a judgment against Borrower for any damages sustained by Bank; Bank be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and Bank be granted such other and further relief as shall be just and equitable.

## FOURTH CAUSE OF ACTION
### (Detinue—Collateral, pleaded in the alternative)

49. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

50. This claim is brought pursuant to Virginia Code Section 8.01-114.

51. Pursuant to the Loan Agreement, Bank is lawfully entitled to possession of the Collateral.

52. Further, on June 9, 2022, in the Default Notices, Bank demanded payment in full on the Loan Agreement and "that all [Collateral] securing the [Loan Agreement] be surrendered immediately."

53. The Collateral has not been returned to Bank.

54. The Collateral is wrongfully held and detained by Borrower.

55. The Collateral has not been taken for any tax, assessment, or fine levied by virtue of any law of any state against the property of Borrower, or against Bank, nor seized under any lawful process or execution or attachment against the goods and chattels of Bank subject to that lawful process, nor held by virtue of any order for replevin against Bank.

56. Based upon the best knowledge, information, and belief of Bank, and in the absence of an inspection and assuming that the Collateral is functioning and in immediately salable condition, the value of the Collateral collectively, based on a recent desk-top appraisal,

for purposes of setting bond only, is approximately $268,427.00.

57. Based on the best knowledge, information and belief of Bank, the Collateral is located in in the possession of Guarantor and is located at 2021 South Providence Road, Richmond, Virginia 23236. Because of the mobile nature of the Collateral, however, Bank seeks the aforementioned injunctive relief to assist it or the sheriff in locating the Collateral upon entry of an order granting Bank's request for detinue.

58. Bank claims the value of Collateral not delivered to the officer by virtue of the enforcement of an order of detinue.

**WHEREFORE**, Bank requests that an order of detinue be entered in favor of Bank granting Bank possession of the Collateral; Bank be awarded a judgment against Borrower for the value of Collateral if not delivered; Bank be awarded a judgment against Borrower for damages for detention; Bank be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and Bank be granted such other and further relief as shall be just and equitable.

DATED:  June 30, 2022

Respectfully submitted,

/s/ Alison R. Ellis
Alison R. Ellis (VSB No. 75564)
Katherine E. Sheffield (VSB No. 96473)*
REED SMITH LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1900
Richmond, VA  23219-4068
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
aellis@reedsmith.com
ksheffield@reedsmith.com

*Admission in process*

*Attorneys for BMO Harris Bank N.A.*

## VERIFICATION

STATE OF IOWA            )
                         )
COUNTY OF LINN           )

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true. I further declare that: My name is Whitney Oliver, I am a litigation specialist of plaintiff, BMO Harris Bank N.A. (the "Bank"), I have authority to make this Verification on the Bank's behalf, and this Verification is made based on my personal knowledge and as facts appear in the business records of the Bank.

*/s/ Whitney Oliver*
Whitney Oliver
Litigation Specialist
BMO Harris Bank N.A.

Sworn and subscribed before me this 27 day of June, 2022, by Whitney Oliver, as Litigation Specialist of BMO Harris Bank N.A. and on its behalf, who (✓) is personally known to me or (__) has produced _____ as identification.

**DEBB WHITE**
Notarial Seal - Iowa
Commission No. 838362
My Commission Expires Mar. 29, 2025

*/s/ Debb White*
Notary Public, State of Iowa
Printed Name: Debb White
Commission No.: 838362
My commission expires: 3-29-25